IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

MARGARET CREMEANS,
CONNIE J. HOOKER CAREY
and RITA NORDHOFF,

      Plaintiffs,

V.                                    CIVIL ACTION NO. 3:03-0064

MICHAEL J. ASTRUE,[1]
Commissioner of the Social
Security Administration,

      Defendant.

**FINDINGS AND RECOMMENDATION**

This matter is before the Court on defendant's renewed motion for summary judgment. Plaintiffs, employees of the Social Security Administration ( hereinafter "Agency") at the Agency's Huntington Office of Hearings and Appeals, assert that they were discriminated against on the basis of age when they were not selected for Paralegal Analyst positions. Additionally, Margaret Cremeans asserts that "her non-selection was motivated by sex discrimination," and Connie J. Hooker Carey asserts that "her non-selection was motivated by

---

[1] Michael J. Astrue replaced Jo Anne B. Barnhart as Commissioner of the Social Security Administration and has been substituted as the defendant.

Retaliation/Reprisal for filing a previous EEO complaint." The facts, as they appear in the record before the Court, are as follows:

Anticipating, as part of what was called the Hearing Process Improvement Initiative, that paralegal analysts would be utilized in the process of adjudicating Social Security cases to, among other things, assist administrative law judges in preparing decisions, and that paralegal analysts positions would be assigned to the Huntington office, Charlie Andrus, the Chief Administrative Law Judge in the Huntington office, decided to offer the legal assistants in the office an opportunity to participate in a "temporary detail" as a paralegal analyst. The detail would give the participants an opportunity to determine whether they enjoyed writing and it would provide a means for evaluating their work. After discussing the matter with the Hearing Office Manager, Harriet Cyrus, and the Supervisory Attorney Advisor, Steven Deem, it was decided that ninety-day details would be offered, that Deem, with help from Judge Andrus, would supervise and mentor the "detailees" and that two legal assistants would be assigned to each ninety-day detail. Seven legal assistants from the Huntington office participated in the details. All but the last participant were supervised by Mr. Deem with assistance from Judge Andrus.[2] Ultimately, three paralegal analyst positions were assigned to the Huntington office, and plaintiffs, along with the other four legal assistants participating in the details applied for the positions. In September of 2000, when the paralegal analysts were chosen by Judge Andrus, Tami Underwood, then thirty-seven, Cynthia Picklesimer, thirty-three, and Anita Davis, forty-three, were selected. At the time of the selection, Margaret Cremeans was fifty-six, Connie J. Hooker Carey was fifty and Rita Nordhoff was fifty-

---

[2] The detail of the last participant, Anita Davis, followed Mr. Deem's transfer to the position of Senior Attorney, and she was supervised by an Acting Supervisory Attorney, John Price.

two. Following their non-selection, plaintiffs sought EEO counseling, filed complaints alleging discrimination which were denied following a hearing before an administrative judge of the Equal Employment Opportunity Commission and, when the Social Security Administration adopted the administrative judge's decision denying their claims, brought suit in this Court.

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of judgment in favor of a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is the moving party who "bears the initial burden of pointing to the absence of a genuine issue of material fact," Temkin v. Frederick County Commissioners, 945 F.2d 716, 718, (4th Cir. 1991); however, the "burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19. While the court must construe the facts "in the light most favorable to the party opposing the motion," United States v. Diebolt, Inc., 369 U.S. 654, 655 (1962), that party "'cannot create a genuine issue of fact through mere speculation or the building of one inference upon another,'" Harleysville Mutual Insurance Company v. Packer, 60 F.3d 1116, 1120 (4th Cir. 1995), and "[t]he mere existence of a scintilla of evidence in support of [a] plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "At bottom, a district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Concluding that in this case

there are not such "genuinely disputed facts" and that defendant is entitled to judgment as a matter of law, it is recommended that the Court grant the pending motion and enter judgment in favor of defendant.

As noted, plaintiffs allege, inter alia, that they were not selected to fill the paralegal analyst positions because of their age, in violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. §621, et seq.[3]  To establish a claim under the ADEA, plaintiffs "must demonstrate that but for the employer's motive to discriminate against the plaintiff[s] on the basis of age" the adverse employment action complained of, the failure to select plaintiffs, would not have occurred.  Equal Employment Opportunity Commission v. Clay Printing Company, 955 F.2d 936, 940 (4th Cir. 1992).   Plaintiffs may do this in one of two ways, i.e., "under ordinary standards of proof by direct or indirect evidence relevant to and sufficiently probative of the issue" of discrimination or by reliance on "the judicially created scheme" established by the Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), "and adopted to ADEA cases."  Equal Employment Opportunity Commission v. Clay Printing Company, supra at 940.  If proceeding under ordinary standards of proof, plaintiffs must "'produce direct evidence of a stated purpose to discriminate [on the basis of age] and/or circumstantial evidence of a stated purpose to discriminate [on the basis of age] of sufficient probative force to reflect a genuine issue of material fact.'"  Id. at 941, quoting Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988).  Neither direct or circumstantial evidence of a stated purpose to discriminate on the basis of age has been presented

---

[3] A separate provision of the ADEA, 29 U.S.C. §633a, applies to the federal government, prohibiting the government from discriminating "based on age" in any personnel action; however, the courts have "applied the same substantive law to cases against both private employers and the federal government."  Farmer v. Secretary of Commerce, 923 F.Supp. 770, 774 n. 7 (M.D. N.C. 1996).

by plaintiffs,[4] and the Court will accordingly analyze their claims of discrimination using the McDonnell Douglas burden-shifting framework.

Under the McDonnell Douglas framework, which involves a process of alternating burdens of production, plaintiffs "must first establish, by a preponderance of the evidence, a 'prima facie' case" of age discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Establishment of a prima facie case creates a rebuttable presumption of discrimination, placing "upon the defendant the burden of producing an explanation to rebut the prima facie case – i.e., the burden of 'producing evidence' that the adverse employment actions were taken' for a legitimate, nondiscriminatory reason.'" Id. at 506-07, quoting Texas Department of Community Affairs v. Burdine, 450 U.S., 248, 254 (1981). If the defendant satisfies this burden of production, "the presumption of unlawful discrimination created by the prima facie case 'drops out of the picture' and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Evans v. Technologies Application & Service Company, 80 F.3d 954, 959 (4th Cir. 1996), quoting St. Mary's Honor Center v. Hicks, supra at 511.

In the context of the present action, plaintiffs establish a prima facie case under the ADEA by showing that: (1) they are members of the ADEA's protected class of persons over forty years of age; (2) they were qualified for the position sought; (3) they were rejected despite their qualifications; and, (4) the positions were awarded to similarly qualified applicants who were substantially younger than plaintiffs. Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006)(en banc).[5]

---

[4] Plaintiffs' response to the summary judgment motion, to the extent related to the issue of age discrimination, consists mostly of unsworn allegations, some obviously hearsay and others simply conclusory statements lacking any factual basis. Testimony from the administrative hearing, while sworn, is similarly deficient.

[5] See also, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996).

Defendant concedes that plaintiffs have established a prima facie case of age discrimination. They are, of course, members of the protected class, they were qualified for the position sought, were rejected and those selected were substantially younger than plaintiffs. It is also apparent that defendant has satisfied his burden of production, producing evidence that plaintiffs were rejected or others "'preferred for a legitimate, nondiscriminatory reason.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). Judge Andrus, who made the selection, testified that in terms of ability to analyze and organize evidence and to prepare a legally defensible decision the work of the individuals chosen was, in his view, superior to that of plaintiffs. He was also of the opinion that there was a "significant gap" in the quality of the writing between those selected and plaintiffs. Finally, his experience with their work as legal assistants led him to conclude that the legal assistants chosen to fill the position of paralegal analysts performed, both in terms of quality of work and production, at a higher level than plaintiffs. He testified that he consulted with the other administrative law judges, with staff attorneys and with the office manager who had supervised the legal assistants in the office, and, without dissent, all of those consulted ranked the candidates in the same order as he had.

The defendant having produced evidence of a legitimate, nondiscriminatory reason for choosing Picklesimer, Underwood and Davis for the paralegal analyst positions, the presumption of discrimination arising from plaintiffs' prima facie case "disappears," and to successfully resist defendant's motion for summary judgment, plaintiffs, who always bear the ultimate burden of proving that defendant discriminated against them on the basis of age, must show that the reasons given by Judge Andrus for his decision were but a pretext for age discrimination. They can do this by, inter alia, showing that they were "better qualified, or by amassing circumstantial evidence that

otherwise undermines the credibility" of defendant's stated reasons.  Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006).  This they have failed to do.

The backgrounds of those selected as compared to that of plaintiffs do not, insofar as the record shows, appear to differ significantly, either with regard to experience,[6] education,[7] achievements, awards for job performance or otherwise.  The evidence indicates that the critical distinction made in this case with regard to the selection of Underwood, Davis and Picklesimer, and the primary qualification for the paralegal analyst position, was based on what Judge Andrus referred to as an ability to analyze and organize evidence and prepare a legally defensible decision.  The evidence also establishes that those chosen possessed superior abilities in this regard, and nothing presented casts doubt on defendant's explanation for his choices or provides a basis for finding pretext.  Without attempting to recite all the evidence, it is noted that decisions written by Margaret Cremeans were described as hurriedly written and missing details by Stephen Deem, the supervisory attorney, who also testified that her decisions contained "some of the same mistakes" in terms of dealing with issues even after he had "gone over that with her."  Rita Nordhoff was similarly described by Deem, and he testified that he had to make some of the same changes, both in grammar and in how she dealt with issues, "from decision to decision."  Deem, who did not supervise Anita Davis, was of the opinion that Tammy Underwood and Cynthia Picklesimer ranked first and second in ability of those he supervised based on the quality and timeliness of their work and the fact that their decisions did not "require much or any corrections."  While Connie Carey did

---

[6] The testimony indicates that experience as a legal assistant, which all of the applicants had, did not really prepare them for performing the work of a paralegal analyst.

[7] Interestingly, one applicant who apparently had no college credits, Tammy Underwood, seems to have received the most plaudits for her writing ability.

not produce as many decisions, in terms of the quality of her work he ranked her third in ability. Deem found "from the start" that Underwood's decisions "were well written, concise" and, though he made some changes, "towards the end of the detail, they did not require much editing and ... were ready to go to the judge with just minor changes pending." As for Cynthia Picklesimer, while he made several changes in her initial decisions, "as the detail progressed, she was able to do sufficient writing to where it was quality and quantity both at the end of the detail." Unlike Cremeans and Nordhoff, Picklesimer did "not make the same mistakes that she had made earlier." In evaluating the work of those he supervised, Deem was looking at their "progression from the start of the detail to the end." If an individual was "making the same mistakes we discussed early on at the end of the detail, that was somewhat upsetting that they would continue to do the same thing wrong." Nordhoff and Cremeans, in his view, "had the most problems in those areas." In his opinion, of the six detailees he supervised, Underwood and Picklesimer demonstrated an ability to perform quality work in a timely manner and would have been ranked at the top of the list with Connie Carey, Rita Nordhoff and Margaret Cremeans following in that order.

   The final detail involved only Anita Davis, and she was supervised by John Price who had become acting supervisory attorney after Stephen Deem took a "lateral transfer." Price found that Anita Davis worked "really fast" and he "had to put the brakes on her." He believed, however, that Davis came to understand the process of writing decisions granting benefits and "was capable of doing grants fully, I mean completely." She then began to write denials, which were more difficult, and when "she did the denials she was doing fine." Though he thought she was "really good" at writing, Price found a decision of Connie Carey's to be "verbose" and talking "about the medical evidence" but failing to "do an analysis." Based on his experience with the applicants,

including familiarity with their work as legal assistants, Price recommended to Judge Andrus that Underwood, Picklesimer and Davis be selected for the analyst positions. In his view, these three "did a good job" of analyzing the evidence and setting forth a basis for decision.

With respect to opinions of administrative law judges as expressed to Judge Andrus, one advised him that there were "a lot of small mistakes in the things [Margaret Cremeans] works on." Another advised that Underwood and Picklesimer were the superior candidates. A third administrative law judge was of the opinion that Cynthia Picklesimer "was doing an excellent job" and had a good handle on decisions. He also testified that, "[a]s time went on," very few changes were made in the decisions drafter by Picklesimer and only "slightly more" in those drafted by Underwood. This judge was "truly impressed" with Cynthia Picklesimer's "analytical ability as far as picking up the medical."

Harriet Cyrus, the Hearing Office Manager who had supervised both plaintiffs and those chosen for the paralegal analyst positions in their work as legal assistants, testified that she recommended to Judge Andrus that he select Cynthia Picklesimer, Tammy Underwood and Anita Davis for the positions. In explaining her recommendations, Cyrus testified that Connie Carey was a "chronic under-producer in the office, generating less cases than virtually anybody else that was in the same position that she was." In her opinion, Carey "oftentimes tended to go off on tangents rather than directing what needed to be found in her development of the case or her working-up of the case for the judge." She described Margaret Cremeans as "an extremely high producer" whose cases were chronically "error-ridden" because "she had a tendency to work too fast." Errors with regard to "significant things" were continually made by Cremeans, and judges returned cases in which they found errors, including "typographical errors, miscalculations of date last insured,

9

omissions on information sheets." With respect to the cases of Rita Nordhoff, Cyrus found "problems with grammar, sentence structure, misspelling of words, problems with homonyms." Cyrus testified that the cases of Tammy Underwood that she reviewed "were very complete" and her "analysis was good." The only problem she had with Underwood was that "she would give almost too much information at times," and Cyrus advised her that she needed to find the middle of the road between giving the judge a lot of information and getting [her] case completed and done." In her view, Picklesimer's cases "were always good," and she "rarely found any problems... ." Cyrus found the "work product" of Anita Davis "generally good," though Davis "had a tendency sometimes to go ahead without realizing that she probably needed to stop and ask a question to find out where she really should be on the case." Neither the number of years an applicant had worked as a legal assistant nor, for the most part, the number of awards received were considered by Cyrus in making her recommendations since the promotions were "merit" promotions, based on a candidate's "ability to do the position for which they are applying as opposed to the amount of time they spent with the agency."

        Plaintiffs rely on evidence concerning their mentoring and other matters to establish pretext and show that defendant discriminated against them on the basis of age. The evidence they rely on, however, simply does not provide any basis for questioning defendant's stated reasons, nor does that evidence support a finding of intentional age discrimination. Plaintiffs complain of the assignment of Stephen Deem as mentor, asserting that he lacked communication and teaching skills and failed to provide any meaningful assistance to them during their details. While the Court is not in a position to evaluate Mr. Deem's teaching or communication skills, it is sufficient to note that all of the applicant's, with the exception of Anita Davis, were mentored by Mr. Deem. Those he

10

mentored included two of the applicants selected for the paralegal analyst positions, and if Deem had not sought and received a transfer, he would have mentored Anita Davis as well. The fact that he mentored plaintiffs or that his mentoring may have been less than satisfactory simply does not, in the context of the facts presented in this case, evidence age discrimination. Plaintiffs have also asserted that assistance was given to those selected by staff attorneys and administrative law judges which was not made available to them. In this regard, the Court notes that Mr. Deem advised all of the applicants he mentored that they were to come to him for assistance and not go to others in the office. They were, however, permitted to seek assistance from John Price when Mr. Deem was out of the office. The evidence indicates that at one time or another all or nearly all of the applicants violated Mr. Deem's directive and that those ultimately selected may have done so more frequently than plaintiffs. This circumstance, however, was a function of a particular applicant's inclination and was obviously not probative of age discrimination. Some of the applicants were simply willing to ignore Deem's directive and others, for the most part, were not. Rita Nordhoff has complained that her detail occurred at a time of the year when there fewer working days because of Thanksgiving, Christmas and New Years, but the Court fails to perceive any basis in this fact for finding age discrimination. Plaintiffs complain that one of the applicants, Cynthia Picklesimer, was permitted to work comp time while others were not; however, it appears that, while Stephen Deem denied comp time, Judge Andrus permitted Cynthia Picklesimer to use comp time after she complained to him that, because of a recent pregnancy, she had used up most of her leave time and comp time was the only way she had "to take her children to the doctor and this type of thing." The fact that Picklesimer was allowed to use comp time under such circumstances does not evidence age discrimination in the selection process. There are numerous allegations for which no evidentiary

11

support was offered, including assertions that Underwood, Picklesimer and Davis were "invited" to writers' meetings while plaintiffs were not and that Picklesimer and Underwood were only given favorable decisions to write so they could get bigger numbers and it would look better on their applications. In this regard, the Court would note that, while Margaret Cremeans and Connie Carey did work on decisions denying benefits, decisions which were more complex than favorable decisions and took longer to write, the evidence indicates that, because of the length of time it took to write unfavorable decisions, Judge Andrus and Mr. Deem decided that those in the other details would write only favorable decisions. Again, this circumstance does not support an inference of age discrimination.[8] Rita Nordhoff testified that Tammy Underwood and Cynthia Picklesimer got two weeks of training from Judge Andrus on medical issues while she received only a few days training. She bases this testimony on the presence of Underwood and Picklesimer in the training room with Judge Andrus at a time when she, Nordhoff, was filling in as receptionist answering the phone. She testified that when she went into the training room to tell Judge Andrus he had a phone call, Underwood and Picklesimer were in the training room with him.[9] Nordhoff also testified that during her detail Judge Andrus "was not in the office hardly at all" but was out of the office "negotiating the contract for the judges." That, under such circumstances, he may have spent more time with some, though not all, of those selected provides no basis for finding age discrimination. Plaintiffs also complain of the fact that, during her detail, Tammy Underwood was given an office to work in

---

[8] The evidence indicates that Anita Davis wrote a number of decisions denying benefits during her detail.

[9] In her testimony, Nordhoff does not describe what she observed in the training room, only that Tammy Underwood, Cynthia Pickleseimer and Judge Andrus were present.

while they were not.[10] Underwood, however, was "given" an office in an area where she could be more closely supervised and would be away from the desk of Margaret Cremeans after Cremeans accused her of taking long lunches and walking "funny" when she returned to the office. Margaret Cremeans asserts that consultation with others was not authorized; however, even if true, the fact that Judge Andrus sought advice before selecting Underwood, Picklesimer and Davis does not support plaintiffs' contention that he discriminated against them because of their age. Evidence of unflattering references to social security claimants as "tired old fat ladies," a harsh confrontation between Connie Carey and an older supervisory employee in the office and a similar confrontation between the same supervisory employee and the "oldest employee" in the office, while, perhaps, not to be condoned, have not been shown to have any relationship to the process of selecting paralegal analysts, either temporally or logically. Other allegations of plaintiffs, even if true, evidence only office friction or, perhaps, pettiness and clearly provide no basis for finding defendant's explanation pretextural or his selection discriminatory. These include having pet names for younger employees,[11] the gift of a cream pie from Judge Andrus to one of those selected, permitting Cynthia Picklesimer to take a break in Judge Andrus's office at a time when she was pregnant, and sending flowers on one occasion to Tammy Underwood. Margaret Cremeans has also alleged that Judge Andrus laid his hands on the shoulder of a younger woman and said, "How are you doing, honey?" Such conduct, if it in fact occurred, certainly might be offensive. It has not been shown, however, to relate to the question of pretext or age discrimination in this case.

---

[10] Neither Cynthia Pickleseimer nor Anita Davis were given an office.

[11] It appears that older employees also had pet names.

13

Plaintiffs have established a prima facie case of age discrimination. They have failed, however, to show that defendant's reasons for selecting Tammy Underwood, Cynthia Picklesimer and Anita Davis were pretextural or that they were not chosen because of their age. While they may believe that they were treated unfairly, and there may be evidence of such treatment, that evidence, by itself, does not, in context, support an inference of age discrimination. The evidence does show that the criterion applied by Judge Andrus was an ability to analyze and organize evidence and to prepare a legally defensible decision,[12] and the undisputed evidence establishes that those chosen were simply better qualified than plaintiffs in this regard. Before making his decision, Judge Andrus sought advice from a number of individuals and in each instance, with the exception noted concerning Mr. Deem, was advised to promote Underwood, Picklesimer and Davis on the basis of their performance both during the details and prior to that time. None of the individuals consulted by Judge Andrus recommended plaintiffs for promotion. Beyond conclusory allegations and unsupported assertions, the Court finds nothing in the record from which to infer that, in making his decision, Judge Andrus considered the age of the applicants. It is apparent that he did not.

In addition to her claim of age discrimination, Connie Carey contends that she was not selected as a paralegal analyst in retaliation "for filing a previous EEO complaint." The evidence with regard to this claim can only be characterized as very scant. In light of evidence which does show that Carey engaged in protected activity by filing an EEO complaint, that she was denied promotion to the position of paralegal analyst and that Judge Andrus was aware of the EEO

---

[12] There is testimony to the effect that detailees were not told that their performance during the details would be used in making a decision; however, even if that were so, it would not provide a basis for concluding that the decision which was made was based on age discrimination.

14

complaint at the time he made his decision with respect to the selection of paralegal analysts, Carey has established a prima facie case of retaliation.[13] Defendant has, as previously described, satisfied his burden of producing legitimate, non-discriminatory reasons for not selecting Connie Carey, and nothing in the evidence creates a factual issue with respect to his proffered reasons or provides a basis for characterizing them as pretextural – nothing indicates that the decision insofar as it concerned Carey was in retaliation for EEO activity. Carey asserts that in her "opinion" she was denied the position because of prior EEO activity, however, beyond her opinion there is no evidence that this was the case.[14] Moreover, the fact that Judge Andrus was aware of her EEO activity "'is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons' for [an] adverse personnel action against" Carey. Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). Taking account of the substantial evidence supporting the proffered basis for selecting paralegal analysts, of the failure of Connie Carey to meet her burden of demonstrating that defendant's proffered reasons were false and of the absence of evidence indicating that such was the case, there is in the record of this case clearly no basis on which a jury could find that her non-selection was in retaliation for EEO activity.

Finally, Margaret Cremeans has asserted what she characterizes in the complaint as a claim for "sex discrimination." It is, more particularly, a claim of "sexual harassment"[15] and stems from alleged incidents involving Judge Andrus occurring between February and May of 1999.

---

[13] See, Laber v. Harvey, supra at 432.

[14] To the extent that her work as an EEO counselor resulted in fewer cases being prepared by her, her activity as a counselor indirectly led to criticism for low production. It was the low production, however, not the EEO activity which was criticized by her supervisors.

[15] To the extent that her claim is simply one of sex or gender discrimination, it is clearly without merit.

15

Because Cremeans waited until September of 2000 to contact an EEO counselor concerning the harassment, defendant asserts that any claim based on such incidents are "time-barred."[16] Without reaching the question of exhaustion under §1614.105, it is apparent that plaintiff has failed to exhaust this claim as a consequence of her failure to include it in her administrative complaint. The complaint which was investigated "claims that based on her age (56) she was not selected for the GS-9/12 Paralegal Analyst position that was advertised under vacancy announcement number 00-227." Subsequent motions to amend her complaint to include a claim of sexual harassment were denied on April 12, 2002 and July 1, 2002, by orders entered by the administrative judge who conducted the hearing on July 24, and 25, 2002. A plaintiff filing suit under Title VII, including federal employees,[17] must exhaust administrative remedies by first raising claims before the EEOC, and the "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002). Beyond a futile last-minute attempt to include the sexual harassment claim in her complaint, plaintiff has not asserted this claim administratively, and as a consequence, she cannot now assert the claim in this civil action.

## **RECOMMENDATION**

---

[16] Federal employees who believe that they have been discriminated against must consult an EEO counselor prior to filing a complaint, initiating "contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. §1614.105(a). Failure to consult will generally result in dismissal for failure to exhaust administrative remedies. See, Zografov v. V.A. Medical Center, 779 F.2d 967, 968-69 (4th Cir. 1985).

[17] See, Khoury v. Meser, 85 Fed.Appx. 960 (4th Cir. 2004)(Unpublished).

16

In accordance with the foregoing, it is **RESPECTFULLY RECOMMENDED** that defendant's motion for summary judgment be granted and this action be dismissed.

Plaintiffs and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to plaintiffs and all counsel of record.

DATED: May 21, 2007

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE